USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: March 24, 2014

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
:
DELVIA M. MOORE,                                      :
                                                      :
                              Plaintiff,              :    13 Civ. 168 (KPF) (GWG)
                                                      :
                      v.                              :    OPINION AND ORDER
                                                      :
ACTING COMMISSIONER OF SOCIAL                         :
SECURITY,                                             :
                                                      :
                              Defendant.              :
------------------------------------------------------X

KATHERINE POLK FAILLA, District Judge:

    Delvia Moore brings this action under Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), to seek review of a final decision of the Acting Commissioner of Social Security (the "Commissioner") denying her application for disability insurance benefits. The parties cross-moved for judgment on the pleadings according to Rule 12(c) of the Federal Rules of Civil Procedure, and the matter was referred to Magistrate Judge Gabriel W. Gorenstein for a report and recommendation.

    Judge Gorenstein has concluded in a 35-page Report & Recommendation (the "Report") that Defendant's motion should be denied and Plaintiff's motion should be granted in part and denied in part; he has also recommended that the case be remanded to the Social Security Administration for further proceedings. Specifically, Judge Gorenstein recommends that on remand, the Administrative Law Judge ("ALJ") develop the record and/or make findings related to whether and, if so, how Plaintiff's pain level, as well as her pain-

management medication regime and its side effects, impact her ability to function in the workplace, and whether Plaintiff needs to straighten her leg while sitting.

Defendant filed objections ("Def. Obj.") to the Report on March 3, 2014. (Dkt. #21). In broad summary, Defendant submits that Judge Gorenstein erred in remanding for further proceedings because substantial medical evidence supported the ALJ's determination of Plaintiff's residual functional capacity (or "RFC"), irrespective of her pain level or any side effects of her pain medication. (Def. Obj. 6-9).[1] Defendant also argues that Judge Gorenstein should have proceeded to conclude that the remainder of the ALJ's decision was also supported by substantial evidence. (*Id.* at 9).

Plaintiff filed her own objections ("Pl. Obj.") on March 14, 2014. (Dkt. #23-24). Not surprisingly, Plaintiff agrees with Judge Gorenstein that the case should be remanded. Separately, however, Plaintiff objects to four of Judge Gorenstein's conclusions concerning: (i) the ALJ's evaluation of the opinions of Plaintiff's treating and examining physicians; (ii) his assessment of "the medical evidence of record"; (iii) his consideration of the combined effect of Plaintiff's limitations; and (iv) "related matters involving Plaintiff's residual functional capacity." (Dkt. #23).

---

[1] The Commissioner's regulations explain to claimants: "Your impairment(s), and any related symptoms, such as pain, may cause physical and mental limitations that affect what you can do in a work setting. Your residual functional capacity is the most you can still do despite your limitations. We will assess your residual functional capacity based on all the relevant evidence in your case record." 20 C.F.R. § 416.945(a)(1).

The Court has reviewed the challenged issues *de novo*, as is its obligation, and has reached the same conclusions as did Judge Gorenstein in his careful and well-reasoned Report. Accordingly, the Report is adopted in its entirety.

## BACKGROUND[2]

The factual background and procedural history of this case set out in Judge Gorenstein's Report are incorporated herein. The Court assumes the parties' familiarity with the underlying facts, the procedural history, and the specification of issues for review, to which the Court refers only as necessary to explain its decision.

## DISCUSSION

**A.    The Standard of Review**

A district court reviewing a magistrate judge's report and recommendation addressing a dispositive motion "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); *see also Grassia* v. *Scully*, 892 F.2d 16, 19 (2d Cir. 1989).

Parties may submit objections to a magistrate judge's report and recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Where a party submits timely objections to a report and recommendation, the district court reviews *de novo* the parts of the report and recommendation to which the party

---

[2]    The facts are drawn from the administrative record of proceedings before the Social Security Administration that was filed by the Acting Commissioner with her Answer to the Complaint ("Tr."), Judge Gorenstein's Report, and the parties' respective objections.

3

objected. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); *see also Lang ex rel. Morgan* v. *Astrue*, No. 05 Civ. 7263 (KMK) (PED), 2009 WL 3747169, at *1 (S.D.N.Y. Nov. 6, 2009).  Where no "'specific written objection'" is made, the district court may adopt those sections "'as long as the factual and legal basis supporting the findings and conclusions set forth ... are not clearly erroneous or contrary to law.'"  *Norman* v. *Astrue*, 912 F. Supp. 2d 33, 39 (S.D.N.Y. 2012) (quoting *Eisenberg* v. *New England Motor Freight, Inc.*, 564 F. Supp. 2d 224, 226 (S.D.N.Y. 2008)) (alteration in *Norman*).

When a claimant seeks review of a Social Security hearing regarding disability benefits, the court's function is not to determine whether the appellant is disabled.  *See Sava* v. *Astrue*, No. 06 Civ. 3386 (KMK) (GAY), 2010 WL 3219311, at *1 (S.D.N.Y. Aug. 12, 2010) ("'[I]t is not our function to determine *de novo* whether plaintiff is disabled.'" (quoting *Schaal* v. *Apfel*, 134 F.3d 496, 501 (2d Cir. 1998)) (alteration in *Sava*)).  Rather, the court determines only "whether the correct legal standards were applied and whether substantial evidence supports the decision."  *Butts* v. *Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004).  The Supreme Court has defined "substantial evidence" as "more than a mere scintilla ... [and] such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson* v. *Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks omitted).

B. **Defendant's Objections**

Defendant argues that Judge Gorenstein erred in faulting the ALJ for failing to consider Plaintiff's testimony regarding her pain level and the side

4

effects of her pain medication. An ALJ "must evaluate [the] combined impact" of various impairments "on a claimant's ability to work, regardless of whether every impairment is severe." *Dixon* v. *Shalala*, 54 F.3d 1019, 1031 (2d Cir. 1995). Judge Gorenstein noted that "the ALJ's decision is not clear on the following points: (1) whether [Plaintiff]'s pain, when uncontrolled by medication, is of a magnitude that would interfere with the concentration that is required for sedentary work; and (2) whether [Plaintiff's] use of medication in fact requires [Plaintiff] to take naps or rest to the degree she alleges." (Report 33). These gaps in the record, Judge Gorenstein found, meant the ALJ could not adequately assess the availability of jobs for which Plaintiff is qualified. (*Id.* at 33-34).

Defendant objects that the record provided substantial evidence for the ALJ's conclusions regarding Plaintiff's ability to work. (Def. Obj. 6-9). No medical records, Defendant points out, indicate that Plaintiff ever told any treating or examining physician that she had difficulty concentrating due to pain or pain medication. (*Id.* at 6). For example, Defendant notes, during Plaintiff's July 27, 2009 examination with the consultative physician Dr. Leena Philip, conducted at the request of the Commissioner, Dr. Philip recorded no observations regarding Plaintiff's ability to sit. (Tr. 398). Defendant also submits that a disability analyst reviewing Plaintiff's medical records found that Plaintiff faced only moderate limitations on her ability to work while sitting for long periods during the workday. (*Id.* at 380). And Defendant supports Judge Gorenstein's conclusion that the ALJ properly discounted Plaintiff's

5

account of her alleged symptoms where that account conflicted with the medical record. (Report 30). As there is substantial evidence in the record supporting the ALJ's determination of Plaintiff's ability to perform sedentary work, and given Plaintiff's apparent failure to report her alleged problems with concentration and wakefulness associated with her pain and pain-management regime, Defendant contends, Judge Gorenstein was wrong to fault the ALJ. (Def. Obj. 8-9).

Defendant's objections miss the mark. The ALJ's decision was not deficient because his conclusions lacked substantial evidence; it was deficient because he failed to consider the impact of every one of Plaintiff's alleged limitations. Insofar as the ALJ engaged with and discounted Plaintiff's own testimony when contradicted by medical evidence, his conclusions had adequate support in the record and Judge Gorenstein correctly rebuffed Plaintiff's objections on that front. The ALJ did, however, simply fail to address Plaintiff's testimony regarding the alleged effects of her pain and pain medication. This was error. *See Green-Younger* v. *Barnhart*, 335 F.3d 99, 108 (2d Cir. 2003) ("As a general matter, objective findings are not required in order to find that an applicant is disabled." (internal quotation marks omitted)); *Brandon* v. *Bowen*, 666 F. Supp. 604, 608 (S.D.N.Y. 1987) ("If the ALJ decides to reject subjective testimony concerning pain and other symptoms, he must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief and whether his determination is supported by substantial evidence.").

Defendant's citations to the administrative record undermine her argument.  Plaintiff's medical records did not refer to the issue of Plaintiff's concentration and wakefulness in connection with her pain symptoms and the side effects of her medication regime.  And Judge Gorenstein correctly found that the ALJ failed to consider Plaintiff's testimony on these important issues regarding her work capacity.  What Judge Gorenstein called "this lacuna in the record" (Report 33), meant that the facts were insufficiently developed to permit the ALJ to assess Plaintiff's suitability for employment.  *See Bathrick* v. *Astrue*, No. 11 Civ. 101 (VLB), 2012 WL 1068985, at *5 (D. Conn. Mar. 29, 2012) ("Without further evidence specifically relating to Bathrick's physical limitations, the Court does not find that the record supports the AJL's RFC determination.…  This case is, therefore[,] remanded for the ALJ to obtain the necessary medical records and or opinions regarding Bathrick's physical limitations, including her abilities to perform the tasks required by medium level jobs.").

Judge Gorenstein was also correct that the record could benefit from development regarding whether Plaintiff needs to straighten her leg because of stiffness and what effect this requirement could have on her ability to work.  (Report. 35 n.14).  Plaintiff testified that she could only sit for approximately half an hour at a time due to the need to straighten her leg after her knee begins to stiffen.  (Tr. 45).  Nor was this the only time she had cited this particular complaint: she informed Dr. Philips, the consultative examiner, that she needed to elevate her leg to handle her knee pain (*id.* at 395), and

7

complained of knee stiffness in her disability claim with the New York State Office of Temporary Disability (*id.* at 188).

The ALJ did not appear to make any reference to this testimony at the hearing in his opinion, instead concluding that Plaintiff's "allegations of her inability to work on a continued, sustained basis as a result of functional limitations are just not consistent with the medical record." (Tr. 24).[3] To the extent the ALJ may have believed that he did not need to examine Plaintiff's testimony further after having judged her to be only partially credible, he would have been wrong. An ALJ who discounts witness testimony must provide a basis for this rejection "with sufficient specificity to permit intelligible plenary review of the record," *Williams ex rel. Williams* v. *Bowen*, 859 F.2d 255, 261 (2d Cir. 1988), and must do so "'in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant,'" *Mimms* v. *Heckler*, 750 F.2d 180, 186 (2d Cir. 1984) (quoting *McLaughlin* v. *Sec'y of Health, Educ. and Welfare*, 612 F.2d 701, 705 (2d Cir. 1980)).

---

[3] The ALJ wrote elsewhere in his opinion that Plaintiff's alleged symptoms were "not credible to the extent they are inconsistent with the above residual functional capacity assessment." (Tr. 27). If this statement were an accurate reflection of the ALJ's decisionmaking process, it would likely have been legally improper. *See Seabrook* v. *Astrue*, No. 11 Civ. 5642 (GBD) (KNF), 2013 WL 1340134, at *3 (S.D.N.Y. Mar. 26, 2013). But, this ambiguous phrase notwithstanding, it is clear that the ALJ in fact evaluated Plaintiff's claims against the medical record in advance of assessing her residual functional capacity. Indeed, several pages earlier, the ALJ provided a clear explanation of his actual approach to assessing Plaintiff's credibility: "[Plaintiff's] allegations of her inability to work on a continued, sustained basis as a result of functional limitations are just not consistent with the medical record." (Tr. 24). And the subsequent analysis in the ALJ's opinion demonstrates that he assessed Plaintiff's alleged symptoms against the body of medical evidence before concluding which portions of her testimony he would credit. *See Stanton* v. *Astrue*, 370 F. App'x 231, 234 (2d Cir. 2010) (summary order) (finding "no reason to second-guess the credibility finding in this case where the ALJ identified specific record-based reasons for his ruling").

The record lacked developed facts regarding whether Plaintiff must straighten her leg due to pain. "'It is the function of the [Commissioner], not [the reviewing courts], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant.'" *McKinstry* v. *Astrue*, 511 F. App'x 110, 112 (2d Cir. 2013) (summary order) (quoting *Aponte* v. *Sec'y, Dep't of Health & Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984)) (first alteration in *McKinstry*, second in *Aponte*). But where, as here, no conflict existed regarding Plaintiff's testimony, it could aid the ALJ's ultimate judgment to develop the record in this respect and consider whether, and if so how, Plaintiff's need to straighten her leg affects her ability to work.[4]

Accordingly, this matter will be remanded to the Commissioner for further proceedings to develop the record with respect to Plaintiff's testimony regarding the cognitive effects of her pain, the side effects of her pain medication, and in any other manner relevant to Plaintiff's claim for disability benefits, such as whether she must straighten her leg to sit without pain.

---

[4]  The ALJ may have sought to address this very problem by observing that Plaintiff spent some time working at a desk job before obtaining retirement from the police department, commuted by train and car, and could drive herself in a car. (Tr. 27 n.5). These facts do not constitute medical evidence, nor do they demonstrate that Plaintiff retains the ability to sit for four hours of a workday, as the ALJ concluded. (*Id.* at 28). For example, it is not even clear whether and to what extent Plaintiff must actually straighten her leg due to stiffness. Nor does the record indicate whether and how Plaintiff's former employer accommodated unusual limitations like a need to straighten her leg. The Court agrees with Judge Gorenstein that development of the record on this point could be useful. *See Sanchez* v. *Astrue*, No. 07 Civ. 9318 (DAB) (THK), 2010 WL 101501, at *18 (S.D.N.Y. Jan. 12, 2010) ("Plaintiff's ability to travel to his programs and socialize with his family — evidence that was cited by the ALJ — [do not] provide any insight into the number of hours Plaintiff is capable of standing.")

Defendant insists that the Court should proceed to consider other issues Judge Gorenstein specifically declined to review in light of his decision to remand for further development of the record. (Def. Obj. 9). As the Court has independently reviewed Judge Gorenstein's recommendation to remand and arrived at the same conclusion, it also will forgo consideration of Defendant's additional arguments to permit the ALJ to develop the record as appropriate and re-evaluate Plaintiff's work capacity. *See, e.g., Rosa* v. *Callahan*, 168 F.3d 72, 83 (2d Cir. 1999) ("Where there are gaps in the administrative record, remand to the Commissioner for further development of the evidence is in order.").

### C. Plaintiff's Objections

While not objecting to the recommendation of remand, Plaintiff objects to several elements of the ALJ's decision upheld by Judge Gorenstein: (i) the ALJ's evaluation of the opinions of Plaintiff's treating and examining physicians; (ii) his assessment of "the medical evidence of record"; (iii) his consideration of the combined effect of Plaintiff's limitations; and (iv) "related matters involving Plaintiff's residual functional capacity." (Dkt. #23). On review, the Court comes to the same conclusion as did Judge Gorenstein in each instance.

#### 1. Evaluation of the Opinions of Plaintiff's Treating and Examining Physicians

First, Plaintiff argues that the ALJ should have clarified the opinion of Dr. Leena Philip, the consultative physician who examined Plaintiff in July

2009. (Tr. 395-400; Report 13).[5] Plaintiff contends that Dr. Philip's report was vague and that the ALJ impermissibly relied on it without seeking clarification. (Pl. Obj. 4-5). Plaintiff points to *Selian* v. *Astrue*, 708 F.3d 409 (2d Cir. 2013), as support for the proposition that ALJs have an obligation to clarify vague reports in this circumstance. The comparison is unwarranted. In *Selian*, an ALJ relied on a "remarkably vague" medical opinion that directly contradicted the claimant's testimony regarding his limitations. *Id.* at 421. The Second Circuit concluded that the report's use of ambiguous (and apparently standardless) terms like "intermittent" to describe the claimant's limitations did not provide substantial medical evidence to reject the claimant's testimony and find specific residual functional capacity, such as the ability to carry 25 pounds. *Id.* The ALJ should, the Second Circuit ruled, have contacted the physician to clarify his report regarding the claimant's limitations. *Id.*

Here, the ALJ accepted Dr. Philip's report that Plaintiff had "moderate limitations to climbing stairs, squatting, [] kneeling … [and] walking long distances secondary to left knee pain" (Tr. 398) because, he found, those observations were "consistent with the treating medical record" (*id.* at 26 n.3). Just as with Plaintiff's treating orthopedists, Dr. Michael Cushner and Dr.

---

5   Dr. Philip was a consulting physician and so her "'report should be given little weight.'" *Giddings* v. *Astrue*, 333 F. App'x 649, 652 (2d Cir. 2009) (summary order) (quoting *Cruz* v. *Sullivan*, 912 F.2d 8, 13 (2d Cir. 1990)). Nonetheless, "'[a]s is the case with the opinion of a treating physician, the Commissioner must provide clear and convincing reasons for rejecting the uncontradicted opinion of an examining physician.'" *Id.* (quoting *Lester* v. *Chater*, 81 F.3d 821, 830 (9th Cir. 1995) (internal quotation marks omitted)).

Michael Palmeri,[6] Dr. Philip made no observations — and Plaintiff made no report — of limitations on sitting or sedentary activity. (*Id.* at 395-99). Dr. Philip's report was not impermissibly vague to the extent it noted "moderate limitations" to certain categories of activity.

More importantly, the ALJ relied on Dr. Philip's report only insofar as he concluded that Plaintiff's limitations regarding standing and walking completely prohibited work requiring those activities. Only sedentary work was even potentially on the table, and Dr. Philip recorded no observations regarding limitations on that category of activity. Plaintiff's appeal to *Selian* is totally inapposite: not only was Dr. Philip's report adequately clear, but any even putative imprecision had no ultimate adverse effect on the ALJ's conclusions regarding the activities of which Plaintiff remained capable. Of course, as noted above, the ALJ's conclusions were deficient in a different respect because he failed to consider and assess Plaintiff's testimony regarding the effects of her unmanaged pain, the side effects of her pain-management medication, and her potential need to straighten her leg while sitting. For those reasons, this case must be remanded for further development of the record.

Second, Plaintiff insists that the ALJ had no medical basis for his judgment that Plaintiff was capable of sedentary work, citing several reasons. (Pl. Obj. 5-8). For example, Plaintiff attacks the ALJ's treatment of the reports

---

6    Dr. Palmeri examined Plaintiff numerous times and each time found specifically that she was disabled from her previous employment as a police officer, without considering how her limitations might affect any other form of employment. (*See, e.g.*, Tr. 299, 300, 301, 314, 332, 333, 334, 348, 349, 350, 352, 353, 355, and 358).

of Dr. Cushner, one of Plaintiff's treating orthopedists. (*Id.* at 5-7). Dr. Cushner considered Plaintiff "unable to work" as of the summer of 2008. (Tr. 372). The ALJ properly construed that judgment as regarding Plaintiff's occupation as a police officer. (*Id.* at 25, 374). Plaintiff raises several objections to this interpretation of Dr. Cushner's records. First, Plaintiff argues that the ALJ and Judge Gorenstein misread the dates of the records of her treatment by Dr. Cushner. They did not. The seven pages in question are broken up into three separate records reflecting two different visits to the Westchester Medical Group, with each report dated to indicate the visit to which it referred, page numbers in the upper right-hand corner of each page indicating how the seven pages are divided into separate reports, and separate signature dates at the end of each report. (*See id.* at 372, 375, 378). According to the dates of the reports themselves, two separate reports contain Dr. Cushner's observations from Plaintiff's visit to the practice on May 28, 2008. One of these reports was signed on May 28, 2008 (*id.* at 372), and the second was signed on June 1, 2008 (*id.* at 375).[7] Every element of the reports, however, indicates that they refer to visits to the Westchester Medical Group in the summer of 2008, and there is no indication that Plaintiff was actually seen at the practice after the alleged onset of her disability.

Plaintiff seems to argue that, in consequence, the ALJ could not rely on Dr. Cushner's observations at all in assessing Plaintiff's limitations after the

---

7   Each of these seven pages also contains, printed in the upper right-hand corner, the date July 30, 2009. There is no indication of what significance, if any, should be read into that date.

13

onset of her disability. (Pl. Opp. 5-6). The ALJ's judgment does not contradict Plaintiff's argument: he found only that Dr. Cushner's examination in 2008 indicated that Plaintiff's symptoms had changed somewhat during the period before her alleged onset of disability and that, in 2008, she was "'unable to work.'" (Tr. 25 (quoting Tr. 372); *see also id.* at 374 (finding that Plaintiff was "unable to continue participating *as an officer* due to the knee" (emphasis added))).[8] The ALJ did not rely on Dr. Cushner's opinion for any inappropriate purpose or as support for any conclusion unsupported by the record.

Plaintiff also submits that the ALJ impermissibly deferred to Dr. Cushner's opinion that Plaintiff was unable to work because such a decision was "reserved to the Commissioner." (Pl. Obj. 6). The ALJ correctly concluded that Dr. Cushner, not a vocational expert, lacked the ability to make an adequate judgment regarding Plaintiff's ability to work in a comprehensive sense. (Tr. 25 n.1). *See generally Lamorey* v. *Barnhart*, 158 F. App'x 361, 362 (2d Cir. 2006) (summary order) (observing that "the disability opinion of a treating physician or psychologist is not binding on the Commissioner"). The ALJ did not accord impermissible deference to Dr. Cushner's opinion.

Finally, Plaintiff argues that the ALJ's construction of Dr. Cushner's opinion as not precluding sedentary work was in error. (Pl. Obj. 6-7). Dr. Cushner's records indicate his judgment that Plaintiff was "unable to continue participating as a police officer" because he found that it was "impossible for

---

8   Dr. Cushner's observation to this effect is recorded in the report signed on June 1, 2008. (Tr. 373-75).

her to stand for long periods of time." (Tr. 374). The ALJ correctly held that this medical opinion did not constitute any finding at all regarding Plaintiff's capacity for other kinds of work; nor, as noted above, could Dr. Cushner, as a non-expert, permissibly have rendered so sweeping a judgment. (*Id.* at 25 & n.1). Plaintiff contends that this interpretation of Dr. Cushner's judgment "relied on a gap in the record" and was a "*post hoc* argument" impermissibly introduced by the Commissioner after the fact to justify a previous judgment. (Pl. Obj. 6-7 (citing *Snell* v. *Apfel*, 177 F.3d 128, 134 (2d Cir. 1999)).

This argument fails. *Snell* dealt with a fundamentally different situation: the SSA Appeals Council had completely ignored the favorable report of a claimant's treating physician with no explanation. 177 F.3d at 134. On appeal, the Commissioner presented a rationale for ignoring the report in question that the Appeals Council itself had not offered. *Id.* The Second Circuit rejected that rationale, under the axiom of administrative law that "'*post hoc* rationalizations for agency action'" are not a permissible basis for upholding that action when no such rationale was apparent on the face of the opinion itself. *Id.* (quoting *Burlington Truck Lines, Inc.* v. *United States*, 371 U.S. 156, 168 (1962)). Not so here: the ALJ simply concluded that Dr. Cushner's observation that Plaintiff was "unable to stand for long periods of time" (Tr. 25, 374) did not indicate any medical judgment at all regarding Plaintiff's ability to work while sitting. (*See id.* at 27 ("The medical record shows no deficits in [Plaintiff's] ability to sit. The medical record does show that walking and standing for prolonged periods of time would be difficult...."

15

(emphasis and footnote omitted))). The ALJ committed no error in his treatment of Dr. Cushner's opinion.

### 2. Medical Evidence of Record

Plaintiff also submits that the ALJ could not properly have come to a conclusion about Plaintiff's residual functional capacity based on Dr. Cushner's and Dr. Palmeri's reports. (Pl. Obj. 7-8). As discussed below, Judge Gorenstein did not address the ALJ's functional capacity assessment and the Court will not do so now: the proper approach is to remand this case for the Commissioner to develop the record fully so the ALJ may make a determination of Plaintiff's ability to work. *Cf. Rosa,* 168 F.3d at 83 ("Where there are gaps in the administrative record, remand to the Commissioner for further development of the evidence is in order.").

### 3. Combination of the Effects of All of Plaintiff's Impairments

Plaintiff protests that the ALJ failed to consider the effect of all of Plaintiff's impairments. (Pl. Obj. 8-10). But of course the Magistrate Judge came to precisely that conclusion. Judge Gorenstein found, and the Court has independently concluded, that the ALJ should have assessed the effects of Plaintiff's pain, the side effects of her medication, and the need for Plaintiff to straighten her leg while sitting. This case will be remanded for those reasons.

Plaintiff also argues that the ALJ should have considered Plaintiff's other impairments, such as her difficulty balancing, her inability to walk on her heels and toes, her limitations in reaching, and her need to avoid respiratory irritants. (Pl. Obj. 9-10). The ALJ considered all of these limitations in

concluding that Plaintiff was capable of sedentary work.  (Tr. 27-28).  Insofar as the ALJ's consideration of the entirety of Plaintiff's combined limitations was deficient in other ways as discussed above, this case will be remanded to develop the record in those respects.  *See Rodriguez* v. *Astrue*, No. 11 Civ. 7720 (CM) (MHD), 2012 WL 4477244, at *41 (S.D.N.Y. Sept. 28, 2012) ("'[T]he ALJ must consider the limitations and restrictions imposed by all of an individual's impairments, without regard to whether any such impairment, if considered separately, would be severe.'" (quoting 20 C.F.R. § 404.1523)).

### 4. Plaintiff's Residual Functional Capacity and Other Issues Not Addressed by the Magistrate Judge

Judge Gorenstein declined to consider the correctness of the ALJ's residual functional capacity assessment because of the need to develop the record to address its inadequacies; Plaintiff seeks the Court's review of this issue now.  (Pl. Obj. 5, 7-10).  Plaintiff also objects to Judge Gorenstein's decision to delay consideration of whether the ALJ posed correct hypothetical questions to a vocational expert to determine whether jobs existed matching Plaintiff's work limitations.  (*Id.* at 9).  Just as with the Commissioner's request above that the Court consider issues not ready for review, the Court agrees with Judge Gorenstein here as well.  Because residual functional capacity assessment must determine "the most" a claimant can do despite her limitations, 20 C.F.R. § 416.945(a)(1), any determination of Plaintiff's residual functional capacity must await a developed record embracing the full set of her work limitations.  *See Wilson* v. *Barnhart*, No. 04 Civ. 2426 (FB), 2005 WL 1787581, at *2 (E.D.N.Y. July 21, 2005) ("In assessing a claimant's RFC,

therefore, the ALJ must consider the limitations and restrictions imposed by all of an individual's impairments, without regard to whether any such impairment, if considered separately, would be severe."). And the propriety of the ALJ's hypothetical questions can only be assessed in light of the ALJ's ultimate factual determinations regarding Plaintiff's ability to work. *See Calabrese* v. *Astrue*, 358 F. App'x 274, 276 (2d Cir. 2009) (summary order) ("An ALJ may rely on a vocational expert's testimony regarding a hypothetical as long as the facts of the hypothetical are based on substantial evidence, *see Dumas* v. *Schweiker*, 712 F.2d 1545, 1553-54 (2d Cir. 1983), and accurately reflect the limitations and capabilities of the claimant involved, *see Aubeuf* v. *Schweiker*, 649 F.2d 107, 114 (2d Cir. 1981).").

## CONCLUSION

Magistrate Judge Gorenstein's Report and Recommendation is adopted in full. The Commissioner's motion for judgment on the pleadings is hereby DENIED. Plaintiff's motion for judgment on the pleadings is hereby GRANTED IN PART and DENIED IN PART. This case is hereby remanded to the Commissioner for further proceedings consistent with this opinion. The Clerk of Court is respectfully direct to terminate the motions pending at docket entries 10 and 13 and to close the case.

SO ORDERED.

Dated:   March 24, 2014
         New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge